IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MUTA ALI ABDUL NAFI,
     Petitioner,

v.                            Case No.  3:11cv379/RV/CJK

MICHAEL D. CREWS,[1]
     Respondent.

_____

## ORDER and
## REPORT AND RECOMMENDATION

     Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer (doc. 27), submitting relevant portions of the state court record (doc. 31).  Petitioner has not replied, although invited to do so.  (Doc. 30).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the

---

[1]Michael D. Crews succeeded Kenneth S. Tucker as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in Okaloosa County Circuit Court Case Number 09-CF-214, with: (1) Robbery Armed with a Firearm, (2) Attempted First Degree Premeditated Murder with a Firearm, (3) Attempted First Degree Felony Murder with a Weapon or Firearm, (4) Fleeing or Attempting to Edule a Law Enforcement Officer (in an Agency Vehicle with Siren and Lights Activated) at High Speed, (5) Shooting at, into, or within an Occupied Vehicle, (6) Possession of a Firearm by a Convicted Felon, (7) Home Invasion Robbery with a Firearm, (8) Armed Kidnapping with a Weapon or Firearm and (9) Carjacking with a Firearm or Deadly Weapon. (Doc. 31, Ex. A, pp. 50-52).[2] On September 8, 2009, petitioner entered into a negotiated plea agreement, memorialized in a written Plea and Sentencing Agreement executed by petitioner, his counsel and the State, whereby petitioner agreed to plead no contest to Counts 1, 3, 7, 8 and 9 as charged in exchange for the State dismissing Counts 2, 4, 5 and 6. (Ex. A, pp. 53-57). Another term of the plea entry and sentencing agreement was that the State would seek petitioner's designation and sentencing as a Prison Releasee Reoffender ("PRR"), or Habitual Felony Offender ("HFO"), or Habitual Violent Felony Offender ("HVFO"). (*Id*.). The Plea and Sentencing Agreement stated that the maximum possible penalty petitioner faced on each of Counts 1, 3, 7, 8 and 9 was life in prison. (*Id*., p. 53). The Plea and Sentence Agreement advised petitioner of the constitutional rights he was waiving by entering his plea, and the consequences of his waiver. (*Id*., pp. 53-54). Petitioner agreed to the factual basis for his plea as contained in the arrest report. (*Id*., p. 56; *see also id.*, p. 3). The State nolle

---

[2]All references to exhibits are to those provided at Doc. 31, unless otherwise noted.

prossed Counts 2, 4, 5 and 6 on September 10, 2009, (*id*., p. 61), and on November 9, 2009, filed a "Notice of Intent to Seek Habitual Violent Felony Offender Sentencing" (*id*., p. 62), and a "Notice of [Petitioner's] Qualification as a Prison Releasee Reoffender and Required Sentencing Pursuant to Fla. Stat. 775.082", with supporting documentation (*id*., pp. 63-109). On November 9, 2009, the trial court accepted petitioner's plea after an extensive and detailed plea colloquy (ex. E, pp. 36-46); adjudicated petitioner guilty of Robbery Armed with a Firearm (Count 1), Attempted First Degree Felony Murder with a Weapon (Count 3), Home Invasion Robbery with a Firearm (Count 7), Armed Kidnaping with a Weapon (Count 8), and CarJacking with a Firearm (Count 9) (ex. A, pp. 110-118); and sentenced petitioner as a PRR to life imprisonment on all counts (*id*.). The court imposed a 10-year minimum mandatory sentence on Counts 1, 7, 8 and 9, and a 15-year minimum mandatory on Count 3, pursuant to the 10-year/20-year/Life minimum imprisonment provisions of Fla. Stat. § 775.087(2)(a), due to petitioner's possession of a firearm during the commission of the offenses. (Ex. A, p. 114). The court further ordered that the sentences on Counts 1 and 3 run concurrent with each other; that the sentence on Count 7 run consecutive to Count 1; and that the sentences on Counts 8 and 9 run concurrent with Count 7. (*Id*., p. 115). The Judgment was filed on November 20, 2009. (Ex. A, p. 110). The Judgment was amended on February 19, 2010, to reflect that petitioner was sentenced as a PRR. (Ex. A, p. 125).

Petitioner appealed, (ex. A, p. 131), but later filed a notice of voluntary dismissal. (Ex. C). On September 21, 2010, the Florida First District Court of Appeal ("First DCA") dismissed petitioner's appeal pursuant to petitioner's notice of voluntary dismissal. (Ex. D).

On November 4, 2010, petitioner filed a *pro se* motion for postconviction relief

under Florida Rule of Criminal Procedure 3.850. (Ex. E, pp. 1-17). The motion was summarily denied on January 13, 2011. (*Id*., pp. 18-47). The First DCA summarily affirmed on July 13, 2011. *Nafi v. State*, 65 So. 3d 1059 (Fla. 1st DCA 2011) (Table) (copy at Ex. H). The mandate issued August 9, 2011. (Ex. I).

While his Rule 3.850 proceeding was pending, petitioner filed a *pro se* motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(a). (Ex. J, pp. 1-10). The trial court summarily denied the motion on May 4, 2011. (*Id*., pp. 11-29). The First DCA summarily affirmed on October 5, 2011. *Nafi v. State*, 72 So. 3d 752 (Fla. 1st DCA 2011) (Table) (copy at Ex. K). The mandate issued November 1, 2011. (Ex. L).

Petitioner filed his federal habeas petition in this Court on August 12, 2011. (Doc. 1, p. 1). Petitioner raises three grounds for relief: (1) petitioner has newly discovered evidence (the affidavit of Yaqub Jameel Faheem that petitioner was coerced into committing the crimes by "physical abuse and dire threats" by the leader of the "Fire-House-Gang", Tim Coney, Jr.) that would have supported a defense of "duress and compulsion" and would have caused petitioner to decline the plea agreement and insist on going to trial; (2) petitioner's plea was not knowing, because petitioner was misadvised that he would receive thirty years in prison in exchange for his plea; and (3) trial counsel was ineffective for failing to object to evidence used to enhance petitioner's sentence. (Doc. 1, pp. 6-9). Respondent asserts that petitioner is not entitled to federal habeas relief, because Ground One fails to state a claim cognizable on federal habeas review, is procedurally defaulted and without merit; and Grounds Two and Three are procedurally defaulted and without merit. (Doc. 27).

## DISCUSSION

Ground One          "The material facts of Mr. Nafi's newly discovered evidence were

not adequately developed at the state court proceeding, see 28 U.S.C. 2254(d)(3) [sic] because Mr. Nafi did not receive a full and fair and adequate hearing in the state court proceeding: 28 U.S.C. 2254(d)(6) [sic] as follows." (Doc. 1, pp. 6-7).

Petitioner asserts that the state postconviction court acted unreasonably when it summarily denied relief on his claim of newly discovered evidence without holding an evidentiary hearing. In support of this claim, petitioner alleges that his former roommate, Yaqub Jameel Faheem, who is now an inmate of the Florida penal system, executed an affidavit after petitioner was convicted, in which Faheem asserted that a leader (Tim Coney, Jr.) and members of the "Firehouse Gang" in West Palm Beach, Florida, physically abused and threatened petitioner to force petitioner to "join in their criminal depredation drug war". (Doc. 1, p. 6). Petitioner asserts that Faheem's affidavit was not "reasonably available" to counsel or petitioner at the time of petitioner's plea, and that had it been available, petitioner would not have entered a no contest plea and would have insisted on going to trial on a defense theory "of duress and compulsion involving petitioner's denial of specific-intent crimes", a defense which, according to petitioner, had a reasonable probability of success with Faheem's "eyewitness" testimony. (*Id.*, p. 6). Petitioner asserts that the state postconviction court's summary denial of his newly discovered evidence claim was unreasonable, because the denial was based exclusively on a finding that petitioner would have known at the time of his plea that he was allegedly coerced to commit the crimes, and the state court failed to consider whether petitioner knew (or could have known with diligence) that Faheem could provide an "eyewitness account" of the threats. Petitioner argues that the state postconviction court's record excerpts did not conclusively refute his allegation that he lacked knowledge of Faheem's availability as a witness, and that since the record does not refute his allegations he is entitled to

an evidentiary hearing. (*Id.*, pp. 6-7). As relief, petitioner asks this Court to "hold an evidentiary hearing on newly discovered evidence". (*Id.*, p. 16).

A copy of Faheem's affidavit appears in the state court record as an attachment to petitioner's Rule 3.850 motion. (Doc. 31, Ex. E, pp. 13-14). Faheem's affidavit states that Faheem and petitioner became roommates in late November of 2008 while residing in West Palm Beach, Florida; that petitioner sold drugs for Tim Coney, Jr., who was the leader of the "Firehouse Gang" located in Rivera Beach, Florida; that some nights Faheem would arrive home from work to find petitioner and members of the Firehouse Gang separating drugs and money in petitioner and Faheem's room; that on two occasions Faheem witnessed petitioner undergoing "physical abuses among threats made to him by Firehouse Gang Member to threaten to kill Muta if, he did not pay 3500 dollars to Tim Coney Jr. the leader of the gang"; that in late January of 2009 petitioner told Faheem that he [petitioner] "had to rob someone in order to pay Tim Coney, Jr. because members of his gang were instructed to kill [petitioner]"; and that Faheem would be willing to testify to these facts "under Protection of immunity". (Ex. E, pp. 13-14).

Respondent asserts that petitioner's claim attacks the process afforded him in his state postconviction proceeding (the state postconviction court's failure to hold an evidentiary hearing), a claim which is not cognizable on federal habeas review because it challenges a proceeding collateral to petitioner's detention and not the detention itself. (Doc. 27, pp. 16-17).

A.    Claims Cognizable On Federal Habeas Review

It is well established in the Eleventh Circuit that a prisoner's challenge to the process afforded him in a state postconviction proceeding does not constitute a

cognizable claim for habeas corpus relief. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Alston v. Dep't of Corr., Fla*., 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's claim – that the state postconviction court acted unreasonably when it determined that he was competent to waive his postconviction proceedings and that his waiver was valid – was not cognizable on federal habeas review; "[T]he state court finding that Alston was competent to waive his post-conviction proceedings concerns the state's application of its own post-conviction procedure, not the legality of Alston's detention."); *Carroll v. Sec'y, DOC, Fla. Attorney Gen*., 574 F.3d 1354, 1366 (11th Cir. 2009) (holding that habeas petitioner's claim – that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing – did not state a claim on which federal habeas relief could be granted); *Anderson v. Sec'y for Dep't of Corr*., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam) (holding that a state court's failure to conduct an evidentiary hearing on a postconviction motion does not constitute a cognizable claim for federal habeas relief); *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (explaining that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention."). As the Eleventh Circuit explained in *Alston*:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a

collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert. denied*, — U.S. —, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment – i.e., the conviction itself – and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F.3d at 1365. Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

*Id*. at 1325-26.

To the extent petitioner seeks federal habeas relief on the ground that the state court unreasonably determined he failed to meet the threshold showing under state law to warrant an evidentiary hearing on his newly discovered evidence claim, petitioner fails to state a claim cognizable on federal habeas review because his claim does not undermine the legality of his conviction, but merely alleges a defect in a proceeding collateral to his confinement (the state's application of its own postconviction procedures). Federal habeas relief on Ground One may be denied on this basis.

B.      Exhaustion and Procedural Default

Respondent also asserts a procedural default defense, arguing that even if petitioner's claim is construed as presenting a federal constitutional challenge to the validity of his plea, petitioner procedurally defaulted the claim by failing to apprise the state postconviction court of the federal constitutional nature of his claim. (Doc. 27, pp. 17-21). Respondent asserts that petitioner made no assertion in state court that he had been deprived of any federal constitutional right, and his arguments made no reference to federal case law. (*Id*., p. 18). Petitioner's argument relied exclusively on

state law.

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th

---

[3]Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

      (B) (i)  there is an absence of available State corrective process; or

        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

The Court need not reach the exhaustion issue, because even construing petitioner's claim in the light most favorable to him (that is, as a federal constitutional challenge to the validity of petitioner's plea based on the alleged "newly discovered evidence" of Faheem's affidavit), petitioner is not entitled to federal habeas relief

because his claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

C.    Merits

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (*citing Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available. *See Henderson v. Morgan*, 426 U.S. 637, 645 (1976). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (citations and internal quotations omitted); *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405, 162 L. Ed. 2d 143 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" (*quoting Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970))). As the Supreme Court explained in *Stumpf, supra*:

> [A] plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal. *See Brady*, 397 U.S., at 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747; *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984).

> Rather, the shortcomings of the deal [the petitioner] obtained cast doubt on the validity of his plea only if they show either that he made the unfavorable plea on the constitutionally defective advice of counsel, *see Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973), or that he could not have understood the terms of the bargain he and [the State] agreed to.

*Id*., 545 U.S. at 186, 125 S. Ct. at 2407. "[R]epresentations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n. 8 (11th Cir.1987) ("[T]here is a strong presumption that the statements made during the [plea] colloquy are true.").

The record in this case, including the written Plea and Sentencing Agreement and the plea colloquy in open court, demonstrates that petitioner's plea was knowing and voluntary. Petitioner understood the charges against him and the possible sentences, and was aware of the constitutional rights he was giving up including the right to present all defenses he may have. (Doc. 31, Ex. A, pp. 53-57 and Ex. E, pp. 36-46). Petitioner's present allegations that he committed his crimes under duress and that he only recently learned that there was evidence corroborating a duress defense (Faheem's newly discovered "eyewitness account"), do not implicate the knowing and intelligent character of petitioner's plea. Petitioner's allegations of duress – that he committed his crimes in northwest Florida on January 28, 2009, because a gang leader in West Palm Beach, Florida compelled him through threats and beatings occurring in November of 2008 to repay a drug debt petitioner owed him – do not arguably

support a defense of duress and necessity under Florida law. To be entitled to a jury instruction on the defense of duress, the defense version of the evidence must demonstrate six elements:

> 1) the defendant reasonably believed that a danger or emergency existed that he did not intentionally cause; 2) the danger or emergency threatened significant harm to himself or a third person; 3) the threatened harm must have been real, imminent, and impending; 4) the defendant had no reasonable means to avoid the danger or emergency except by committing the crime; 5) the crime must have been committed out of duress to avoid the danger or emergency; and 6) the harm the defendant avoided outweighs the harm caused by committing the crime.

*Driggers v. State*, 917 So. 2d 329, 330 (Fla. 5th DCA 2005). *See* Std. Jury Instr. (Crim.) 3.6(k). The facts as petitioner (and Faheem's affidavit) relate them do not arguably establish the six elements necessary to assert a viable defense of duress.

Also fatal to petitioner's claim is that petitioner was necessarily aware, at the time he entered his plea, of the evidence allegedly supporting his duress defense. Petitioner personally experienced the alleged threats and beatings arising from his unpaid debt, and petitioner was the one who told Faheem in late January of 2009 that he felt compelled to rob someone to avoid gang members' threats of death arising from the unpaid debt. (*See* Doc. 31, Ex. E, p. 14 (Faheem Affidavit stating: "Late January of 2009, Muta [petitioner] advised me that he had to Rob someone in order to pay Tim Coney Jr. because members of his gang were instructed to kill Muta.")).

Petitioner's allegations, even taken as true, do not arguably show either that petitioner entered his plea on constitutionally defective advice of counsel, or that petitioner was not fully aware of the circumstances or consequences of his plea, or that petitioner did not understand the terms of the bargain he and the State agreed to. Petitioner's Ground One provides no basis for federal habeas relief, and should be

denied without an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007) ("[I]f the record refutes the application's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

<u>Ground Two</u>      <u>"Petitioner was misadvised that he would receive 30 years as a sentence in exchange for a plea agreement."</u> (Doc. 1, pp. 7-8).

Petitioner claims trial counsel was ineffective for failing to move to withdraw his plea on the grounds that the State violated the plea agreement. (Doc. 1, p. 8). Petitioner does not explain how the State violated the plea agreement. Petitioner's Rule 3.850 motion alleged that the State violated the plea agreement "by not stipulation to the court upon entry of Nolo-Contendere Plea. His Plea agreement expressly provided that he would be sentence to a thirty-year sentence structure insofar as the [State] would (nolle-Pros) counts (2)(4)(5) and (6)." (Doc. 31, Ex. E, p. 2). Petitioner's claim also suggests that trial counsel was ineffective because he "incorrectly conveyed to him [petitioner] a potential thirty-year sentence and the maximum he face is possible life sentence is reason why he had responded 'yes' when state court made its inquiry." (Doc. 1, p. 8).

Respondent asserts that petitioner did not properly exhaust this claim (and it is now procedurally defaulted), because petitioner's brief on appeal of the order denying postconviction relief "made no reference to any federal constitutional provision or claim and referred to no federal case law. Petitioner relied solely on state court decisions in his brief." (Doc. 27, p. 22).[4] Respondent further argues that even if

---

[4]Respondent's exhaustion argument discusses petitioner's "direct appeal from his violation of probation proceeding" and petitioner's "brief on direct appeal". (Doc. 27, p. 22). Because this case did not involve a violation of probation, and because petitioner voluntarily dismissed his direct appeal before filing a brief, the Court construes respondent's exhaustion argument as discussing

petitioner's claim is reviewed on the merits, he is not entitled to federal habeas relief because the trial court's findings are supported by the record, and its decision is not contrary to or an unreasonable application of controlling Supreme Court precedent. (Doc. 27, p. 25). The Court need not reach the exhaustion issue, because petitioner's claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2).

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387. The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S.Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel). *Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S., at 57, 106 S. Ct. 366 (*quoting Strickland*, 466 U.S.

petitioner's brief on appeal of the order denying postconviction relief.

at 688, 104 S. Ct. 2052)). *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. 366.

Petitioner's claim that trial counsel was ineffective for failing to move to withdraw petitioner's plea on the grounds that the State violated the plea agreement by failing to limit petitioner's sentence exposure to thirty years and/or by failing to nolle pross Counts 2, 4, 5 and 6, is conclusively refuted by the record. The State made no promise to limit petitioner's sentence exposure to thirty years. The written Plea and Sentencing Agreement stated explicitly that petitioner's maximum possible sentence on each count was life in prison, that the State was going to seek enhanced sentencing under the PRR statute, the HFO statute, or the HVFO statute, and that no one (neither petitioner's attorney, the Court, nor the prosecutor) made any promises about what petitioner's sentence would be or the actual time petitioner would serve. (Doc. 31, Ex. A, p. 53). The written Plea and Sentencing Agreement also provided that the State would dismiss Counts 2, 4, 5 and 6. (*Id*.). The State fully complied with its promise to dismiss Counts 2, 4, 5 and 6 when it nolle prossed those Counts prior to sentencing. (*Id*., p. 61). Petitioner's assertion that the State promised to limit his sentence exposure to thirty years is also rebutted by petitioner's sworn statements during the plea proceeding:

> MR. ELMORE [prosecutor]: Has [your attorney] fully explained to you that the only consideration for this Plea and Sentencing Agreement that you are receiving from the State is the dismissal of Counts 2, 4, 5, and 6?

MR. NAFI:  Yes, sir.

MR. ELMORE:   And that the State will be seeking a life sentence pursuant to Prison Releasee Re-offender, Habitual Violent Felony Offender or Habitual Offender status?

MR. NAFI:  Yes, sir.

(Doc. 31, Ex. E, p. 41 (page 6 of plea hearing transcript)).

Petitioner's claim that counsel was ineffective because he misadvised petitioner that he would receive thirty years in prison if he entered the plea, is also refuted by the record – those portions of the written Plea and Sentencing Agreement and the plea colloquy discussed above.

Petitioner's Ground Two provides no basis for federal habeas relief, and should be denied.

Ground Three          "Trial counsel was ineffective for failing to object to evidence used to enhance sentence."  (Doc. 1, pp. 8-9).

Petitioner's final claim is that trial counsel was ineffective for failing to object, on grounds of inadmissible hearsay under *Yisrael v. State*, 993 So. 2d 952 (Fla. 2008), to the State's introduction of certain documents from the South Carolina Department of Corrections to establish that petitioner qualified for enhanced sentencing. Petitioner asserts that "[t]here is, in fact, reasonable probability that but for counsel's unprofessional errors, he would have went to trial.  Therefore, state court's denial of this claim was based on unreasonable determination of facts in light of the state court proceeding."  (Doc. 1, pp. 8-9).

Respondent asserts a procedural default defense, arguing that petitioner did not present this instance of ineffective assistance of counsel to the state court.  Respondent alleges that petitioner's motion for postconviction relief presented a <u>similar</u> claim –

that counsel was ineffective for failing to object to the State's introduction of records from the South Carolina DOC – but the claim was different in that petitioner did not fault counsel for failing to object on hearsay grounds, he faulted counsel for failing to object on grounds of lack of proper notice (the State's failure to file the requisite written notice under Fla. Stat. § 90.803(6)(c), of its intent to offer a business record by means of a certification or declaration). (Doc. 27, pp. 26-29). Respondent alternatively argues that the claim is without merit.

Again, the Court need not reach the exhaustion question because petitioner's claim fails on the merits. First, as respondent points out, petitioner cannot establish that trial counsel was deficient for failing to object on hearsay grounds to admission of the South Carolina DOC records, because the records were the type <u>approved</u> in *Yisrael, supra.* The records were not stand-alone "release date letters" as petitioner asserts, they were letters of the South Carolina DOC records custodian authenticating and certifying attached DOC business records. (*See* Ex. A, pp. 63-109). Any objection on hearsay grounds would have been overruled. Counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Petitioner's Ground Three provides no basis for federal habeas relief, and should be denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Michael D. Crews has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Muta Ali A Nafi a/k/a Steven Pressley*

in the Circuit Court for Okaloosa County, Florida, Case No. 09-CF-214, be DENIED, and the Clerk be directed to close the file.

    2. That a certificate of appealability be DENIED.

    At Pensacola, Florida this 25th day of June, 2013.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).